IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,

v.

REGINALD PARROTT,
*Defendant.*

Criminal Action No. ELH-18-017
**UNDER SEAL**

## MEMORANDUM OPINION

Reginald Parrott, through counsel, filed an "Emergency Motion For Compassionate Release Pursuant To 18 U.S.C. § 3582(c)(1)(A)(i)." ECF 737. It is supported by a memorandum of law (ECF 739) (collectively, the "Motion") and two sealed exhibits, including extensive medical records. ECF 739-1; ECF 739-2. The government opposes the Motion (ECF 745) and submitted one sealed exhibit. ECF 745-1. Defendant has replied. ECF 748.

No hearing is necessary to resolve the Motion. For the reasons that follow, I shall deny the Motion.

## I.    Background

A grand jury in the District of Maryland returned an indictment on January 11, 2018, charging Parrott and 17 codefendants with conspiracy to distribute or possess with intent to distribute one kilogram or more of heroin, in violation of 21 U.S.C. § 846. ECF 1. Pursuant to a Plea Agreement (ECF 544), Parrott entered a plea of guilty on May 1, 2019 (ECF 548) to a one-count Superseding Information (ECF 542). Parrott was charged with conspiracy to distribute or possess with intent to distribute 100 grams or more of heroin, in violation of 21 U.S.C. § 846. *Id.*

In the Plea Agreement, the parties stipulated to a base offense level of 30 pursuant to the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"). ECF 544, ¶ 6(a). But, the

parties disagreed as to the application of a two-level increase for possession of a firearm during the commission of the offense, pursuant to U.S.S.G. § 2D1.1(b)(1).  *Id.*  And, the defendant reserved the right to argue that he was a minimal participant and thus eligible for a four-level deduction, pursuant to U.S.S.G. § 3B1.2(a).  *Id.*

In a supplement to the Plea Agreement, the defendant agreed to cooperate with the government.in exchange for immunity with respect to anything he disclosed during the course of cooperation and a possible downward departure, pursuant to § 5K1.1 and/or 18 U.S.C. § 3553(e). ECF 545 (Supplement to Plea Agreement).

The Plea Agreement included a stipulation of facts.  *See* ECF 544 at 9. The stipulation noted that the facts "do not encompass all of the evidence that would have been presented had this matter proceeded to trial."  *Id.*  According to the stipulation, from "at least as early as March 2017" until January 2018, Parrott belonged to the "Good Pussy" heroin shop in Baltimore and he conspired with others to obtain wholesale quantities of heroin and to distribute one kilogram or more of heroin at the street-level.  *Id.*  Through the use of pole cameras, law enforcement captured video evidence of daily drug trafficking by defendant's coconspirators.  *Id.*  And, during an authorized wiretap, investigators intercepted several phone calls between the defendant and a coconspirator, in which they "coordinate[d] the drug shop's operations…."  *Id.*

On November 1, 2017, a search warrant executed at the defendant's residence.  *Id.*  After being advised of his *Miranda* rights, Parrott informed the officers that there was a gun in the residence.  *Id.*  The defendant directed the officers to the front left pocket of a suit in a closet in the back bedroom of the residence, where they recovered a Colt revolver.  *Id.*  Parrott admitted that "it was reasonably foreseeable to him that members of the conspiracy would distribute at least one kilogram but not more than three kilograms of heroin."  *Id.*

The defendant was detained from the time of his arrest in November 2017 until his detention hearing on April 2, 2018.  ECF 636.  After the detention hearing, defendant was released on pretrial supervision, and he remained on release until he self-surrendered on October 9, 2019, to begin service of his sentence.  ECF 745.

The Presentence Investigation Report ("PSR," ECF 636) reflected a base offense level of 30.  *Id.* ¶ 16.[1]  Parrott received a four-level deduction for being a minimal participant in the criminal activity and another three-level deduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1.  *Id.* ¶¶ 19-24.  And, the government did not seek an enhancement for the possession of a firearm.  *Id.* ¶ 104.  As a result, Parrott had a final offense level of 23.  *Id.* ¶ 25.

Parrott had seven criminal history points, resulting in a Criminal History Category of IV.  *Id.* ¶ 47.  In particular, he had five prior State convictions for distribution or possession of controlled substances, which dated to 2000, 2007, 2011, and 2013.  *Id.* ¶¶ 37, 38, 40, 42, 43.  The defendant received a sentence of seven years of incarceration for the first offense and served about three years in prison.  *Id.* ¶ 37.  He never served more than a few days in prison for the other offenses.  *Id.* ¶¶ 38, 40, 42, 43.  Parrott also had numerous other convictions, including for assault, battery, and handgun violations, but those did not score any points.  *Id.* ¶ 29, 32, 34.

Based on an offense level of 23 and a Criminal History of IV, Parrott's Guidelines called for a period of incarceration ranging from 70 to 87 months of imprisonment.  *Id.* ¶ 103.  The defendant was also subject to a statutory minimum term of five years' imprisonment under 21 U.S.C. § 841(b)(1)(B).  *Id.* ¶ 102.

---

[1] The first PSR (ECF 612) was entered on July 3, 2019, but it was amended on August 7, 2019, to reflect a change in defendant's address and a four-level reduction for the defendant's role as a minimal participant.  ECF 636 at 25.

Sentencing was held on August 7, 2019. ECF 634. At sentencing, the government moved for a downward departure under § 5K1.1 and 18 U.S.C. § 3553(e) because the defendant provided substantial assistance. The government recommended a sentence of 30 of months incarceration. *Id.* The Court agreed with that recommendation and imposed a term of imprisonment of 30 months. ECF 637 (Judgment); ECF 638 (Statement of Reasons).

Parrott, who was born in 1971, is now 49 years of age. ECF 739-1 (Medical Records) at 2. He is presently incarcerated at FCI Fort Dix, a minimum security facility. ECF 739 at 1. Parrott has served about 10 months of his sentence since entering Fort Dix on October 9, 2019. *Id.* at 9. And, because he was credited for time served from November 2, 2017 to April 2, 2018, ECF 637 at 2, he has served a total of 15 months of his 30-month sentence. This equates to about 50% of the sentence, exclusive of good time credits under 18 U.S.C. § 3624(b). Defendant has a projected release date of May 5, 2021. ECF 745-1 (Inmate Profile).

The defendant has almost completed the Residential Drug Abuse Treatment Program (RDAP). ECF 739 at 9. According to defense counsel, accounting for good time credit and credit for completing RDAP, he has served about 83% of his sentence. ECF 739 at 9.

Parrott's medical history includes Acute Hepatitis C, hypertension, solitary kidney, and elevated glucose levels. ECF 739 at 1-2; ECF 739-1. Parrott had one of his kidneys removed when he was about 27 as a result of a gunshot wound. ECF 636, ¶ 83; ECF 739-1 (Medical Records) at 3.

The defendant initially requested consideration for compassionate release on March 31, 2020. ECF 745-1 at 1. Parrott submitted two additional requests on April 29 and May 8, 2020, respectively. ECF 745-1 at 3, 6. In response to each request, Executive Assistant M. Bridges

told Parrott to re-submit his request with one specific category to justify his release, citing BOP

Program Statement 5050.50 and 18 U.S.C. § 3582(c)(1)(A).  ECF 745-1 at 2, 4, 8.

Additional facts are included, *infra*.

## II.   Standard of Review

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed."

18 U.S.C. § 3582(c); *see United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United*

*States v. Jackson,* 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395

(4th Cir. 2019).  But, "the rule of finality is subject to a few narrow exceptions."  *Freeman v.*

*United States*, 564 U.S. 522, 526 (2011).  One such exception is when the modification is

"expressly permitted by statute."  18 U.S.C. § 3582(c)(1)(B); *see Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, 18 U.S.C. § 3582(c)(1)(A)(i)

provides a statutory vehicle to modify a defendant's sentence.  Section 3582 was adopted as part

of the Sentencing Reform Act of 1984.  It originally permitted a court to alter a sentence only

upon a motion by the Director of the BOP.  *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030

(1984).  Thus, a defendant seeking compassionate release had to rely on the BOP Director for

relief.  *See*, *e.g.*, *Orlansky v. FCI Miami Warden*, 754 F. App'x 862, 866-67 (11th Cir. 2018);

*Jarvis v. Stansberry*, No. 2:08CV230, 2008 WL 5337908, at *1 (E.D. Va. Dec. 18, 2008)

(denying  compassionate release motion because § 3582 "vests absolute discretion" in the BOP).

However, for many years the safety valve of § 3582 languished.  BOP rarely filed

motions on an inmate's behalf.  As a result, compassionate release was exceedingly rare.  *See*

*Hearing on Compassionate Release and the Conditions of Supervision Before the U.S.*

*Sentencing Comm'n* 66 (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of

Justice) (observing that, on average, only 24 inmates were granted compassionate release per

year between 1984 and 2013).

In December 2018, Congress significantly amended the compassionate release mechanism when it enacted the First Step Act of 2018 ("FSA"). *See* Pub. L. 115-391, 132 Stat. 5239 (2018). As amended by the FSA, 18 U.S.C. § 3582(c)(1)(A) permits a court to reduce a defendant's term of imprisonment "upon motion of the Director of [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first. So, once a defendant has exhausted his administrative remedies, he may petition a court directly for compassionate release.

Under § 3582(c)(1)(A), the court may modify the defendant's sentence if, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," it finds that

(i) extraordinary and compelling reasons warrant such a reduction;

(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Accordingly, in order to be entitled to relief under 18 U.S.C. § 3582(c)(1)(A)(i), the defendant must demonstrate that (1) "extraordinary and compelling reasons" warrant a reduction of his sentence; (2) the factors set forth in 18 U.S.C. § 3553(a) countenance a reduction; and (3) the sentence modification is "consistent" with the policy statement issued by the Sentencing

Commission in U.S.S.G. § 1B1.13.

"When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court may grant a reduction only if it is 'consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Taylor*, ___ F. App'x ___, 2020 WL 5412762, at * 1 (4th Cir. Sept. 9, 2020) (per curiam) (citing 18 U.S.C. § 3582(c)(1)(A)); *see also* 28 U.S.C. § 994(t) (directing Sentencing Commission to "describe what should be extraordinary and compelling reasons for sentence reduction").

U.S.S.G. § 1B1.13 is titled "Reduction in Term of Imprisonment under 18 U.S.C. § 3582(c)(1)(A) Policy Statement." U.S.S.G. § 1B1.13(1)(A) provides for a sentence reduction based on "extraordinary and compelling reasons," and § 1B1.13(1)(B) provides for a reduction based on age, in combination with other requirements. U.S.S.G. § 1B1.13(2) establishes as a relevant factor that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."

The Application Notes permit compassionate release based on circumstances involving illness, declining health, age, exceptional family circumstances, as well as "other reasons." Application Note 1 to U.S.S.G. § 1B1.13 defines "Extraordinary and Compelling Reasons" in part as follows (emphasis added):

> 1. **Extraordinary and Compelling Reasons**.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A) **Medical Condition of the Defendant**.—
>
> (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

(I)  suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of
the  aging process,

that substantially diminishes the ability of the defendant to provide self-care
within the environment of a correctional facility and from which he or she is
not expected to recover.

Application Note 1(B) provides that age is an extraordinary and compelling reason where

the defendant is at least 65 years of age, has serious physical or mental health issues, and has

served at least 10 years in prison or 75% of the sentence.  Application Note 1(C) concerns

Family Circumstances.  Application Note 1(D) is titled "**Other Reasons.**"  It permits the

court to reduce a sentence where, "[a]s determined by the Director of the Bureau of Prisons,

there exists in the defendant's case an extraordinary and compelling reason other than, or in

combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13

App. Note 1(D).

The  BOP  regulation  appears  at  Program  Statement  5050.50,  Compassionate

Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 2582 and

4205.  The Court may not rely on the Program Statement, however.  Rather, the Court must

consider the Sentencing Commission's policy statements.  *Taylor*, 2020 WL 5412762, at * 1.

The defendant, as the movant, bears the burden of establishing that he is entitled to a

sentence reduction under 18 U.S.C. § 3582.  *See*, *e.g.*, *United States v. Hamilton*, 715 F.3d 328,

337 (11th Cir. 2013); *United States v. Edwards*, NKM-17-00003, 2020 WL 1650406, at *3

(W.D. Va. Apr. 2, 2020).  If the defendant can show an extraordinary and compelling reason that

renders him eligible for a sentence reduction, the Court must then consider the factors under 18

8

U.S.C. § 3553(a) to determine whether, in its discretion, a reduction of sentence is appropriate. *Dillon*, 560 U.S. at 827.   But, compassionate release is a "rare" remedy.   *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020); *United States v. Mangarella*, FDW-06-151, 2020 WL 1291835, at \*2-3 (W.D. N.C. Mar. 16, 2020); *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019).

### III.   COVID-19[2]

Defendant filed his Motion while the nation is "in the grip of a public health crisis more severe than any seen for a hundred years."   *Antietam Battlefield KOA v. Hogan*, CCB-20-1130, ___ F. Supp. 3d ___, 2020 WL 2556496, at \*1 (D. Md. May 20, 2020).   That crisis is COVID-19.[3]   The World Health Organization declared COVID-19 a global pandemic on March 11, 2020.   *See Seth v. McDonough*, PX-20-1028, 2020 WL 2571168, at \*1 (D. Md. May 21, 2020).

The judges of this Court "have written extensively about the pandemic."   *United States v. Williams*, PWG-19-134, 2020 WL 3073320, at \*1 (D. Md. June 10, 2020) (collecting cases). Therefore, it is not necessary to recount in detail the "unprecedented nature and impact" of the pandemic.   *Id.*

That said, the Court must underscore that the virus is highly contagious.   *See Coronavirus Disease 2019 (COVID-19), How COVID-19 Spreads*, CTRS. FOR DISEASE CONTROL & PREVENTION (Apr. 2, 2020), https://bit.ly/2XoiDDh.   Moreover, although many people who are stricken with the virus experience only mild or moderate symptoms, the virus can cause severe

---

[2] The Court may take judicial notice of matters of public record.   *See* Fed. R. Evid. 201.

[3] Severe Acute Respiratory Syndrome Coronavirus 2 (SARS-CoV-2) is the cause of coronavirus disease 2019, commonly called COVID-19.   *See Naming the Coronavirus Disease and the Virus that Causes It*, WORLD HEALTH ORG., https://bit.ly/2UMC6uW   (last accessed June 15, 2020).

medical problems as well as death, especially for those in "high-risk categories . . . ." *Antietam Battlefield KOA*, 2020 WL 2556496, at *1 (citation omitted).   As of September 29, 2020, COVID-19 has infected more than 7.1 million Americans and caused over 205,000 deaths in this country.  *See COVID-19 Dashboard*, THE JOHNS HOPKINS UNIV., https://bit.ly/2WD4XU9 (last accessed Sept. 29, 2020).

The COVID-19 pandemic is the worst public health crisis that the world has experienced since 1918.  *See United States v. Hernandez*, 451 F. Supp. 3d 301, 305 (S.D.N.Y. 2020) ("The COVID-19 pandemic . . . . presents a clear and present danger to free society for reasons that need no elaboration.").   The pandemic "has produced unparalleled and exceptional circumstances affecting every aspect of life as we have known it."  *Cameron v. Bouchard*, LVP-20-10949, 2020 WL 2569868, at *1 (E.D. Mich. May 21, 2020), *stayed*, 818 Fed. App'x 393 (6th Cir. 2020).  Indeed, for a significant period of time, life as we have known it came to a halt. Although many businesses have reopened, many are subject to substantial restrictions.   And, in view of the recent resurgence of the virus, businesses are again facing closure.

Unfortunately, there is currently no vaccine, cure, or proven treatment that is available. Moreover, according to the Centers for Disease Control and Prevention ("CDC"), certain risk factors increase the chance of severe illness.  Those risk factors initially included age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system.  *See Coronavirus Disease 2019 (COVID-19), People Who Are at Risk for Severe Illness*, CTRS. FOR DISEASE CONTROL & PREVENTION (May 14, 2020), https://bit.ly/2WBcB16.

On June 25, 2020, the CDC revised its guidance. Then, on July 17, 2020, to reflect the most recently available data, the CDC again revised its guidance as to medical conditions that

pose a greater risk of severe illness due to COVID-19. *See People of Any Age with Underlying Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION (July 17, 2020), https://bit.ly/38S4NfY. According to the CDC, the factors that increase the risk include cancer; chronic kidney disease; COPD; being immunocompromised; obesity, where the body mass index ("BMI") is 30 or higher; serious heart conditions, including heart failure and coronary artery disease; sickle cell disease; and Type II diabetes.

The CDC has also created a second category for conditions that "might" present a risk for complications from COVID-19. The factors that might increase the risk include cerebrovascular disease, hypertension, pregnancy, liver disease, cystic fibrosis, neurologic conditions, a compromised immune system, smoking, and Type I diabetes. *See id.* Moderate to severe asthma is an underlying medical condition that was moved to the new category by the CDC; it is now identified as a condition that "might" put an individual at higher risk for COVID-19 complications. *See id.*

Thus far, the only way to slow the spread of the virus is to practice "social distancing." *See Coronavirus Disease 2019 (COVID-19), How to Protect Yourself & Others*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://bit.ly/3dPA8Ba (last accessed May 21, 2020). Social distancing is particularly difficult in the penal setting, however. *Seth*, 2020 WL 2571168, at *2. Prisoners have little ability to isolate themselves from the threat posed by the coronavirus. *Id.*; *see also Cameron*, 2020 WL 2569868, at *1. They are not readily able to secure safety products on their own to protect themselves, such as masks and hand sanitizers. Consequently, correctional facilities are especially vulnerable to viral outbreaks and ill-suited to stem their spread. *See Coreas v. Bounds*, TDC-20-0780, 2020 WL 1663133, at *2 (D. Md. Apr. 3, 2020) ("Prisons, jails, and detention centers are especially vulnerable to outbreaks of COVID-19."); *see*

11

*also* Letter of 3/25/20 to Governor Hogan from approximately 15 members of Johns Hopkins faculty at the Bloomberg School of Public Health, School of Nursing, and School of Medicine (explaining that the "close quarters of jails and prisons, the inability to employ effective social distancing measures, and the many high-contact surfaces within facilities, make transmission of COVID-19 more likely"); *accord Brown v. Plata*, 563 U.S. 493, 519-20 (2011) (referencing a medical expert's description of the overcrowded California prison system as "'breeding grounds for disease'") (citation omitted).

The Department of Justice ("DOJ") has recognized the unique risks posed to inmates and employees of the Bureau of Prisons ("BOP") from COVID-19.  The DOJ has adopted the position that an inmate who presents with one of the risk factors identified by the CDC should be considered as having an "extraordinary and compelling reason" warranting a sentence reduction. *See* U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I).

Attorney General William Barr issued a memorandum to Michael Carvajal, Director of the BOP, on March 26, 2020, instructing him to prioritize the use of home confinement for inmates at risk of complications from COVID-19.  *See Hallinan v. Scarantino*, 20-HC-2088-FL, 2020 WL 3105094, at *8 (E.D. N.C. June 11, 2020).  Then, on March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. No. 116-136, 134 Stat. 281.  In relevant part, the CARES Act authorized the Director of BOP to extend the permissible length of home confinement, subject to a finding of an emergency by the Attorney General.  *See* Pub. L. No. 116-136, § 12003(b)(2).  On April 3, 2020, the Attorney General issued another memorandum to Carvajal, finding "the requisite emergency . . . ." *Hallinan*, 2020 WL 3105094, at *9.  Notably, the April 3 memorandum "had the effect of expanding the [BOP's] authority to grant home confinement to any inmate . . . ." *Id.*

On March 23, 2020, the CDC issued guidance for the operation of penal institutions to help prevent the spread of the virus. *Seth*, 2020 WL 2571168, at \*2. Notably, the BOP has implemented substantial measures to mitigate the risks to prisoners, to protect inmates from COVID-19, and to treat those who are infected. *See* ECF 745 at 10-12 (detailing measures that BOP has implemented at BOP facilities). Indeed, as the Third Circuit recognized in *United States v. Raia*, 954 F.3d 594, 597 (3rd Cir. 2020), the BOP has made "extensive and professional efforts to curtail the virus's spread."

As with the country as a whole, however, the virus persists in penal institutions.[4] As of September 29, 2020, the BOP had 126,699 federal inmates and 36,000 staff. Also as of September 29, 2020, the BOP reported that 1,886 inmates and 717 BOP staff currently tested positive for COVID-19; 13,057 inmates and 1,133 staff had recovered from the virus; and 124 inmates and two staff member have died from the virus. And, the BOP has completed 58,849 COVID-19 tests. *See* https://www.bop.gov/coronavirus/ (last accessed Sept. 29, 2020). *See COVID-19*, FED. BUREAU OF PRISONS, https://bit.ly/2XeiYH1.

With respect to Fort Dix FCI, where the defendant is a prisoner, as of September 29, 2020, the BOP reported that two inmates have currently tested positive for COVID-19, 34 inmates have pending tests, and 35 inmates and 6 staff have recovered at the facility. And, the facility has completed 498 tests. There are no reported deaths. *See* https://www.bop.gov/coronavirus/ (last accessed Sept. 29, 2020).

---

[4] The *New York Times* reported in June 2020 that cases of COVID-19 "have soared in recent weeks" at jails and prisons across the country. Timothy Williams et al., *Coronavirus cases Rise Sharply in Prisons Even as They Plateau Nationwide*, N.Y. TIMES (June 18, 2020), https://nyti.ms/37JZgH2.

## IV.    Discussion

Parrott moves for compassionate release on the ground that his health conditions render him particularly vulnerable to COVID-19.  ECF 739 at 6-8.  In particular, defendant avers that he suffers from two conditions identified by the CDC as risk factors: liver infection as reflected by his Acute Hepatitis C and hypertension.  *Id.* at 7; *see* ECF 739-1.  Further, defendant contends that he is not a danger to the community and that the factors under 18 U.S.C. § 3553(a) favor release. ECF 739 at 8-9.

The government opposes Parrott's Motion at each step of the analysis.  The government first contends that Parrott failed to exhaust administrative remedies.  ECF 745 at 2-3.  It also argues that Parrott's medical conditions do not make him eligible for release.  *Id.* at 15-16.  And, in any event, the government maintains that the § 3553(a) factors militate against reducing Parrott's sentence.  *Id.*

### A.  Exhaustion of Administrative Remedies

Parrott initially filed a request for release on March 31, 2020.  ECF 745-1 at 1.  On April 27, 2020, Executive Assistant M. Bridges advised Parrott to re-submit his request with one specific category to justify his release, citing BOP Program Statement 5050.50 and 18 U.S.C. § 3582(c)(1)(A).  *Id.* at 2.   In response, Parrott submitted a new request on April 29, 2020, describing his medical conditions.  *Id.* at 3.  Parrott received another response advising him to re-submit his request with one specific category to justify his release.  *Id.* at 4.  On May 8, 2020, Parrott submitted another request, seeking "Compassionate Care Release under Category 3, medical circumstances," and citing his loss of a kidney, hypertension, and diabetes.  *Id.* at 6-7.  On May 19, 2020, Parrott received the same response from Bridges.  *Id.* at 8.

The government argues that Parrott's numerous requests do not count toward the exhaustion requirement applicable to a compassionate release request.   ECF 745 at 2-3. Although it is true that the BOP continually advised him to re-submit his request, Parrott submitted three requests for release over the course of the Spring and made a good faith effort to comply with the requirements.   Moreover, it would be unjust to deem the request improper merely because it did not the use particular terms when the import of the request was clear.

I am satisfied that Parrott has exhausted his administrative remedies, as required by § 3582(c)(1)(A).

### B.  Compassionate Release

As to grounds for relief under § 3582(c)(1)(A)(i), the defendant asserts that his medical conditions qualify him for release. In addition to hypertension and Acute Hepatitis C, Parrott contends that he is particularly vulnerable because he only has one kidney and his high glucose levels "present[] a strong indication of hyperglycemia, if not emerging diabetes."  ECF 739 at 7. Finally, defendant's counsel emailed chambers on September 17, 2020, to report that the defendant has been assaulted by an inmate at Ft. Dix.  And, as a result Parrott has a fractured leg and is now confined to a wheelchair.

However, the government contends that the defendant has not established a serious medical condition that might support release because hypertension "does not necessarily indicate that the Defendant is definitely at risk for COVID-19."  ECF 745 at 15-16.  And, Parrott's other medical conditions are not on the list of CDC risk factors.  *Id.* at 15.  Further, because there are no active COVID-19 cases at Ft. Dix, the government claims that the "risk that the Defendant faces from continued detention at Fort Dix generally is similar to, if not lower than, that which he faces if this Court released him to the general population in Maryland."  *Id.*

To be sure, the coronavirus is not "tantamount to a 'get out of jail free' card." *United States v. Williams*, PWG-13-544, 2020 WL 1434130, at \*3 (D. Md. Mar. 24, 2020) (Day, M.J.). But, the CDC cautions that the "more underlying medical conditions someone has, the greater their risk is for severe illness from COVID-19." *Coronavirus Disease 2019 (COVID-19), People Who Are at Risk for Severe Illness*, CTRS. FOR DISEASE CONTROL & PREVENTION (May 14, 2020), https://bit.ly/2WBcB16. Here, in addition to hypertension, Parrott has Acute Hepatitis C, a solitary kidney, and elevated glucose levels, which may aggravate his vulnerability to COVID-19.

Moreover, numerous courts have found that, in light of the COVID-19 pandemic, hypertension, along with other conditions, qualifies as a compelling reason for compassionate release. *See, e.g., United States v. Patterson*, TJS-20-1078, 2020 WL 2217262, at \*3 (D. Md. May 7, 2020) ("There is ample evidence that people with hypertension are more likely to experience complications if they become infected with COVID-19"); *United States v. Gutman*, RDB-19-0069, 2020 WL 24674345, at \*2 (D. Md. May 13, 2020) (finding defendant's age of 56 years, multiple sclerosis, and hypertension satisfied extraordinary and compelling reason); *United States v. Coles*, No. 00-cr-20051, 2020 WL 1976296, at \*7 (C.D. Ill. Apr. 24, 2020) (granting compassionate release to defendant with hypertension, prediabetes, prostate issues, bladder issues, and a dental infection); *United States v. Zukerman*, 451 F. Supp. 3d 329, 336 (S.D.N.Y. 2020) (concluding that defendant's diabetes, hypertension, obesity, and age satisfied extraordinary and compelling reason); *United States v. Ullings*, 1:10-CR-00406, 2020 WL 2394096, at \*4 (N.D. Ga. May 12, 2020) (finding defendant's age, hypertension, and obesity constituted an extraordinary and compelling reason); *United States v. Foreman*, 3:19-CR-62 (VAB), 2020 WL 2315908, at \*4 (D. Conn. May 11, 2020) (finding defendant's age,

hypertension, and obesity satisfied an extraordinary and compelling reason); *United States v. Quintero*, 08-CR-6007L, 2020 WL 2175171, at *1 (W.D.N.Y. May 6, 2020) (finding defendant's diabetes, compromised immune system, obesity, and hypertension satisfied an extraordinary and compelling reason). *But see United States v. Wright*, Nos. TDC-17-388, TDC-19-35, 2020 WL 2571198, at *3 (D. Md. May 21, 2020) (denying compassionate release to defendant with diabetes, hypertension, chronic kidney disease, asthma, and obesity); *United States v. Barringer*, PJM-13-0129, 2020 WL 2557035, at *4 (D. Md. May 19, 2020) (denying compassionate release to defendant with hypertension, diabetes, chronic kidney disease, and extreme obesity).

Accordingly, I conclude that Parrott has presented medical conditions that constitute an "extraordinary and compelling" reason to reduce his sentence under § 3582(c)(1)(A)(ii). However, there were no confirmed cases of COVID-19 among inmates at Ft. Dix as of September 29, 2020. Thus, although the presence of COVID-19 within a prison is not a necessary prerequisite for release, and an outbreak could occur at any time, the fact that there are no cases at Ft. Dix reduces the imminence of the risk of harm to Parrott.

The Court must also consider whether, if released, Parrott would pose a danger to the community. *See* 18 U.S.C. § 3582(c)(1)(A)(ii). The government urges that conclusion, citing the seriousness of his offense in this case and the defendant's prior criminal history of numerous convictions. ECF 745 at 18. And, according to the government, if defendant is released, he "might again engage in drug trafficking." *Id.* at 19.

Parrott acknowledges the seriousness of the crime at issue here. ECF 739 at 8. But, he argues that it was the product of his drug addiction, and he claims he has "fully engaged in his recovery" and is no longer a danger to the community. ECF 739 at 8; ECF 748 at 8. Further,

Parrott contends that he "has a loving and supportive family back home in Baltimore who will provide a stable environment" for him.  ECF 739 at 8.

As I see it, the sentencing factors under 18 U.S.C. § 3553(a) do not weigh in favor of reducing Parrott's sentence.  These include: (1) the nature of the offense and the defendant's characteristics; (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; (3) the kinds of sentences available and the applicable Guidelines range; (4) any pertinent Commission policy statements; (5) the need to avoid unwarranted sentence disparities; and (6) the need to provide restitution to victims.

Parrott's prior record is particularly relevant to this analysis. From age 18 to 45, the defendant amassed 19 convictions.  ECF 636 at 7-14.  Most of these convictions involved drug possession for which the defendant did not serve time in prison.  But, some of his convictions also involved disturbing conduct and firearms.  He was convicted of battery in 1991, a handgun violation in 1994, and second-degree assault and possession of a firearm in 1997.  ECF 636, ¶¶ 29, 32, 34.  And, he served about two years of imprisonment for the handgun offense in 1994. *Id.* ¶ 32.  He also served about three years for the offense in 2000 of a possession with intent to distribute. *Id.* ¶ 37.  Yet, these numerous convictions and time in prison did not deter defendant from the commission of the offense that led to his federal prosecution.  Indeed, he had been attending court ordered substance abuse and mental health treatment at Bright Horizons when he committed the offense in this case.  Therefore, even if Mr. Parrott's conduct was the product of his drug addiction, as he avers, the Court is not confident that he is no longer a danger to the community.

The Court applauds Parrott's rehabilitative efforts.  But, the defendant's sentence is significantly below both the Guidelines range and the mandatory minimum.  As I observed at

Mr. Parrott's sentencing, it is rare for the government not to seek a two-level enhancement for the gun.  ECF 634.  And, the defendant has only served about 15 months of his rather short sentence.

Given the facts of the offense, coupled with the defendant's prior criminal history, the Court concludes that release under 18 U.S.C. § 3582(c)(1)(A) is not warranted at this time.  But, **nothing in the Memorandum Opinion is meant to dissuade the BOP from releasing Parrott to home confinement, pursuant to 18 U.S.C. § 3642(c).**

### V.    Conclusion

For the forgoing reasons, I shall deny the Motion (ECF 739).

An Order follows, consistent with this Memorandum Opinion.


Date:   October 2, 2020                                    _____/s/_____
                                                          Ellen Lipton Hollander
                                                          United States District Judge